## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EPIPHANY F. STOMS, individually and as Administratrix of the Estate of DAVID W. STOMS, decedent, and as Guardian ad Litem of ALEXIS D. STOMS and CHAD D. STOMS, | ) ) ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | C.A. No. N14C-01-163 MJB |
| FEDERATED SERVICE INSURANCE COMPANY | ) ) ) ) | |
| Defendant | ) ) | |

Submitted: August 14, 2014
Decided: November 20, 2014

*Upon Plaintiff's Motion for Summary Judgment,* **DENIED**.

*Upon Defendants' Motion for Summary Judgment,* **GRANTED**.

### OPINION

Jonathan B. O'Neill, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill, P.A., 56 W. Main Street, Plaza 273, 4th Floor, P.O. Box 8149, Newark, Delaware 19714, *Attorney for Plaintiff.*

James S. Yoder, Esquire, White and Williams LLP, 824 N. Market Street, Suite 902, Wilmington, Delaware 19899, *Attorney for Defendant.*

**BRADY, J.**

# I. INTRODUCTION

On November 3, 2012, David W. Stoms ("Decedent") was involved in an automobile accident with an uninsured driver. Decedent was killed in the accident, and Decedent's minor daughter was seriously injured. At the time of his death, Decedent was driving a car owned by his employer, Diamond Motor Sports, Inc. ("Diamond Motor"). The vehicle was insured by Federated Service Insurance Company ("Federated").

Plaintiff Epiphany F. Stoms was married to Decedent and lived with Decedent until his death. Alexis D. Stoms ("Alexis") and Chad D. Stoms ("Chad") are the minor children of Plaintiff and Decedent. On January 18, 2014, Plaintiff filed the instant action on behalf of herself, on behalf of Decedent's estate, and on behalf of Alexis and Chad, demanding that Federated pay supplemental uninsured motorists benefits, beyond the statutory minimum, to compensate the family for medical expenses, funeral expenses, pain and suffering, and punitive damages against the uninsured motorist.

The parties have both moved for Summary Judgment. A hearing in this Court was held on August 14, 2014, at which the Court determined that the Plaintiff's claim for punitive damages is proper. The Court now finds that Plaintiff's cause of action against Federated is precluded as Decedent did not have supplemental uninsured/underinsured motorists coverage under the Federated policy. For this reason, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and Plaintiff's claim for punitive damages is **MOOT**.

## II. FACTS

### A. The November 3, 2012 Accident

On November 3, 2012, at approximately 10:15 p.m., Decedent and Alexis were involved in a two-car automobile accident (the "Accident") on Delaware Route 1, near Dover, in Kent County, Delaware. Decedent was killed in the Accident, and Alexis was severely injured. It is undisputed that the Accident was caused by the negligent and reckless conduct of the other driver, Matthew E. Bair ("Bair"), an uninsured motorist.

At the time of Accident, Decedent was employed as a "finance manager" at Diamond Motor located in Dover, Delaware. When the Accident occurred, Decedent was driving a 2010 Toyota Yaris, owned by Diamond Motor and registered in Delaware. Decedent was permitted to use the company car for personal use during non-business hours. At the time of the Accident, Decedent and Alexis, who was the sole passenger in the car, were returning from a family outing.

### B. The Insurance Policy

Defendant Federated provided uninsured motorist coverage to Diamond Motor as part of a Commercial Package Policy (policy number 9361613), which was in effect on the date of the Accident ("Policy"). There is a provision of the Policy that specifically addresses supplemental uninsured motorists coverage. This provision is contained in a document entitled, "Delaware Commercial Automobile Uninsured Motorists Coverage Option Form."[1] This provision states, "Delaware law requires that Uninsured Motorists Insurance must be provided for limits at least equal to State Financial Responsibility limits… Delaware law allows [the insured] to select higher limits up to $300,000[,] but not greater than the policy's liability limit, or [the insured]

---

[1] Delaware Commercial Automobile Uninsured Motorists Coverage Option Form ("Option Form"), Exhibit A to Defendant's Corrected Motion for Summary Judgment (July 10, 2013) at 1.

may REJECT this coverage."[2]  The document directs the insured to indicate its choice by checking boxes below and signing and dating the form.

The section below, entitled "Limit Options," contains two selections that the insured must make.  The first reads, "Limit for directors, officers, partners or owners of the named insured and family members who qualify as insureds."  This first selection is followed by four check-boxes, indicating different monetary amounts that the insured may select.  In this case, Diamond Motor selected a $300,000 limit for "directors, officers, partners or owners."[3]  The second selection reads, "Limit for any other person who qualifies as an insured."  This selection is followed by five check-boxes, four of which indicate monetary amounts and the fifth of which indicates that coverage is declined.  Diamond Motor checked the fifth box, which says, "I hereby REJECT [supplemental] Uninsured Motorists Insurance including Underinsured Motorists Insurance for this group of persons only."[4]

### C. The Instant Action

On January 18, 2014, Plaintiff filed the instant action on behalf of herself, on behalf of Decedent's estate, and on behalf of Alexis and Chad.[5]  Plaintiff demands damages including damages for the wrongful death of Decedent and resulting damages to herself and her children, medical expenses and pain and suffering for Alexis, and funeral and other expenses for Decedent.[6]  Plaintiff also demands punitive damages for the tortuous conduct of Bair.[7]  Plaintiff originally brought suit against both Federated and Liberty Mutual Fire Insurance Company

---

[2] Option Form at 1.
[3] Option Form at 1.
[4] Option Form at 1.
[5] Complaint at 1.
[6] Complaint at 2-3.
[7] Complaint at 3.

4

("Liberty Mutual"), who was believed to have provided uninsured motorists coverage for Decedent. However, Plaintiff subsequently voluntarily dismissed Liberty Mutual.[8]

On March 10, 2014, Federated filed an Answer. In the Answer, Federated argues that the Policy does not provide coverage for punitive damages.[9] Federated also argues that imposing punitive damages against Federated would violate various Constitutional provisions as well as public policy.[10] Additional defenses include that Plaintiff's claims may be barred by the terms of the insurance contract,[11] barred by Diamond Motor's failure to fully comply with its obligations under the policy,[12] and barred by Plaintiff's failure to demonstrate the non-existence or exhaustion of the tortfeasor's insurance.[13]

### III. PRESENT MOTIONS

### A. Federated's Motion for Summary Judgment

On May 29, 2014, Federated filed the instant Motion for Summary Judgment. Federated filed a Corrected Brief in Support of the Motion for Summary Judgment on July 10, 2014. Federated argues that (a) the Policy is valid and enforceable, and (b) the Policy does not provide any supplemental uninsured motorists coverage (beyond mandated "limits at least equal to State Financial Responsibility limits"[14]) for Decedent or his daughter.[15] Specifically, Federated maintains that the contractual provision contained in the "Delaware Commercial Automobile Uninsured Motorists Coverage Option Form" is valid; that the provision unequivocally indicates Diamond Motor's rejection of supplemental coverage for "any other person who qualifies as an

---

[8] Order (June 6, 2014), "Stipulation of Partial Dismissal".
[9] Answer at 2.
[10] Answer at 3.
[11] Answer at 3.
[12] Answer at 3.
[13] Answer at 4.
[14] Option Form at 1.
[15] Federated's Corrected Brief in Support of Motion for Summary Judgment at 5-6.

insured" who is not included in the category of "directors, officers, partners or owners of the Named Insured and family members who qualify as insureds"; and Decedent as "finance manager" did not qualify as a director, officer, partner, or owner. Federated's position is that "Decedent was an employee[,] but not a director, officer, partner or owner (or a family member) of the Named Insured [i.e., Diamond Motor]," and hence Decedent and Alexis are not eligible for the additional coverage.[16]

Federated argues that the provision in the Policy is valid because Delaware law allows an insured to opt out of supplemental uninsured motorists coverage under 18 *Del C.* §3902(a) so long as the rejection is in writing. Federated maintains that the provision in the instant case constitutes Diamond Motor's unambiguous rejection of supplemental uninsured motorists coverage for employees other than directors, officers, partners, or owners.[17] In anticipation of Plaintiff's primary argument, Federated argues that it is not against public policy for an insured employer such as Diamond Motor to have a policy that treats directors, officers, partners, and owners more favorably than other employees.

Federated cites *Davis v. State Farm* for the proposition that persons who purchase an automobile insurance policy may have higher levels of coverage than third-party permissive users of the vehicles covered by the policy.[18] The *Davis* court found that automobile insurance coverage is "personal" to the one who purchases the policy; and, for this reason, the purchaser should be allowed the benefit of higher coverage (than third party permissive drivers or guests) if he so chooses.[19] Although *Davis* involved natural persons as insureds rather than businesses,

---

[16] Federated's Corrected Brief in Support of Motion for Summary Judgment at 6.
[17] Federated's Corrected Brief in Support of Motion for Summary Judgment at 6.
[18] Federated's Corrected Brief in Support of Motion for Summary Judgment at 6 (*citing Davis v. State Farm Mutual Automobile Insurance Company*, 2011 WL 1379562, at *5 (Del. Super. Ct. Feb, 15, 2011)).
[19] *Davis*, 2011 WL 1379562, at *6.

6

Federated argues that the same reasoning should be applied to the instant case.[20] Directors, officers, partners, and owners act on behalf of the business; and the actions which they perform include purchasing insurance. For this reason, they stand in the shoes of the individual purchasers of insurance in *Davis*. Ordinary employees, argues Federated, are different; they do not act on behalf of the business in the capacity of purchasing insurance. Hence, argues Federated, ordinary employees are more akin to the third party permissive drivers or guests in *Davis*.[21]

Federated further argues that there is no legal basis for Plaintiff's prayer for punitive damages. Federated maintains that punitive damages would only be appropriate if Plaintiff could demonstrate that Federated acted in bad faith, which Plaintiff has not alleged.[22] Claims by insureds against insurers are governed by contractual analysis, and the Delaware Supreme Court has held that punitive damages are not available in contract absent as showing of bad faith.[23]

## B. Plaintiff's Motion for Summary Judgment

On June 30, 2014, Plaintiff responded in opposition to Federated's Motion for Summary Judgment and cross-moved for Summary Judgment.[24] Plaintiff advances two main arguments. First, Plaintiff contends that the provision limiting supplemental coverage to company officers, directors, partners, or owners is void as contrary to public policy.[25] Second, Plaintiff argues that even if the provision is not void, it is at least ambiguous and should be construed against the

---

[20] Federated's Corrected Brief in Support of Motion for Summary Judgment at 7-8.

[21] Federated argues that, "Directors, officers, partners or owners are the types of individuals who are typically authorized to purchase a commercial auto policy on behalf of a business entity. As such, persons falling within this classification of insureds under a commercial policy are equivalent to the individual named insureds under the personal auto policies at issue in *Davis v. State Farm*." Federated's Corrected Brief in Support of Motion for Summary Judgment at 8.

[22] Federated's Corrected Brief in Support of Motion for Summary Judgment at 9.

[23] Federated's Corrected Brief in Support of Motion for Summary Judgment at 9 (*citing Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 266 (Del. 1995)).

[24] To avoid confusion, the Court will cite Plaintiff's briefs concerning Plaintiff's cross-motion for Summary Judgment by their submission dates. The June 30, 2014 brief will be cited as "Plaintiff's June 30 Brief."

[25] Plaintiff's June 30 Brief at 7.

insurance company who drafted it and in favor of Decedent.[26]  Specifically, Plaintiff argues that Decedent "arguably fits the definition as an officer or director, as he was in a managerial position at the time of the crash."[27]  Concerning Federated's argument that punitive damages are not proper, Plaintiff responds that Delaware law provides that a plaintiff who would have been entitled to collect punitive damages from an uninsured motorist may collect the same damages from the insurance carrier.[28]

In support of her argument that the exclusion in the Policy is contrary to public policy, Plaintiff relies primarily on *State Farm v. Washington* for the proposition that exclusions in uninsured motorists coverage are contrary to public policy.[29]  In *Washington*, the insured agreed to have his son specifically excluded from his automobile insurance policy due to the son's poor driving record under a "named driver exclusion."  The son was subsequently involved in an accident while driving his aunt's car, which was not covered by the father's policy.  The accident was caused by the negligence of an uninsured driver, and the parties agreed that the son was not negligent in a manner proximately causing or contributing to the accident.[30]  The son argued that, as a relative residing with the father, he should be covered under his father's uninsured motorists policy.  The insurer agreed that the son would have been covered under the policy had he been a passenger in another car but argued that the named driver exclusion excluded the son from coverage when he was the driver.[31]  The Court found the exclusion invalid on the grounds that (a) the parties agreed that the son would have been covered had he been a passenger; and (b) the purpose of the named driver exclusion was to insulate the insurer from the son's negligence,

---

[26] Plaintiff's June 30 Brief at 11.
[27] Plaintiff's June 30 Brief at 11.
[28] Plaintiff's June 30 Brief at 12 (*citing Jones v. State Farm Mut. Auto. Ins. Co.*, 610 A.2d 1352, 1354 (Del. 1992)).
[29] *State Farm Mut. Auto Ins. Co. v. Washington*, 641A.2d 449 (Del.1994).
[30] *Id.*
[31] *Id.* at 450.

and the son was not negligent in the instant case.[32]  Plaintiff argues that Decedent and Alexis, like the son in *Washington*, were innocent victims of an uninsured motorist and thus should not be excluded from coverage.[33]

Plaintiff initially conceded that "Delaware law permits different levels of coverage for different types of insureds in the area of [supplemental uninsured motorists] insurance," arguing instead that it is the *complete exclusion* of a class of insureds from supplemental uninsured motorists coverage that is contrary to public policy. [34]  In support of this position, Plaintiff cited *State Farm v. Wagamon*, in which the Court found invalid a "household exclusion," which excluded the payment of a liability insurance claim when the injured party was a member of the insured's household.[35]  The claimant in *Wagamon* was the insured's mother, who was injured while her daughter was driving.  The mother sued the daughter, and the insurance company declined to pay any benefits on the grounds of the "household exclusion."[36]  Plaintiff suggests that the instant case is analogous to *Wagamon*, as it concerns the exclusion of an entire class of claimants from coverage.

Plaintiff later revised her position, citing the Indiana case of *Balagatas v. Bishop* for the proposition that all employees must be covered equally.[37]  In *Balagatas*, the Indiana Court of Appeals held that a contractual provision (nearly identical to the one in the instant case) allowing an employer-insured to elect additional uninsured motorists coverage for officers and directors but reject additional coverage for other employees was invalid as contrary to the intent of the applicable Indiana statute, which mandated equal coverage for all insureds.[38]

---

[32] *Id.* at 452-453.
[33] Plaintiff's June 30 Brief at 8.
[34] Plaintiff's June 30 Brief at 9.
[35] *State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557, 558-559 (Del. 1988).
[36] *Id.*
[37] Plaintiff's July 30 Brief at 8-9 (*citing Balagtas v. Bishop*, 910 N.E.2d 789 (Ind. Ct. App. 2009)).
[38] *Id*. at 795.

In support of her argument that the exclusionary provision is ambiguous, Plaintiff cites Black's Law Dictionary's definition of "officer" as: "Person holding office of trust, authority[,] or command in public affairs, government[,] or a corporation," and "director" as: "One who manages, guides, or orders; a chief administrator."[39] Plaintiff argues that Decedent, who was a "finance manager," arguably fits the description of an officer or director; and the Policy does not explicitly define the terms "officer" or "director" otherwise.

### C. Defendant's Arguments in Response

In Defendant's Response Brief in Opposition to Plaintiff's cross-motion, Defendant renews its argument that "Decedent was just an employee, not a director, officer, partner or owner of Diamond Motor."[40] Defendant says that this position is supported by the affidavit of Mr. Warren, the owner of Diamond Motor, who affirmed that a person holding the job of Finance Manager is merely an employee and nothing more.[41]

Defendant maintains that, contrary to Plaintiff's contention, there is no ambiguity in the terms "officer" or "director" as they appear in the Policy.[42] As "officer" and "director" are corporate terms, their plain meaning comes from corporate law. Defendant argues that, under Delaware Corporations Law, these terms have precise technical definitions, which do not apply to Decedent. According to Defendant, a "director" is "a person who is a member of the Board of Directors of a corporation with overall control of a company."[43] The fact that Decedent's job as Finance Manager may have included "directing" people, does not make him a "director" under

---

[39] Plaintiff's June 30 Brief at 11 (*citing Black's Law Dictionary* at 536-537, 232 (4th Pocket Ed. 2011)).
[40] Defendant's July 15 Brief at 1.
[41] Defendant's July 15 Brief at 7.
[42] Defendant's July 15 Brief at 7.
[43] Defendant's July 15 Brief at 7 (*citing* 8 *Del. C.*§141(a)).

10

the corporate definition.[44] In support of its argument that merely "directing" people does not make an employee a "director" for insurance purposes, Defendant cites an Eighth Circuit case, *United Fire v. Thompson*, holding that the meaning of "director" is defined by corporate law and an employee is not a "director" merely because his job includes "directing' people.[45] Similarly, Defendant argues that Decedent was not an "officer," as the meaning of that term is established by Delaware Corporations Law, which provides that, "Every corporation organized under this chapter shall have such officers with such titles and duties as shall be stated in the bylaws or in a resolution of the board of directors…"[46]

## IV. LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[47] A motion for summary judgment, however, should not be granted when material issues of fact are in dispute or if the record lacks the information necessary to determine the application of the law to the facts.[48] A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49] Thus, the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[50]

---

[44] Defendant's July 30 Brief at 7.
[45] *United Fire & Casualty Insurance Company v. Thompson*, 758 F.3d 959 (8th Cir. 2014).
[46] Defendant's July 15 Brief at 7-8 (*citing* 8 *Del. C*. §142)
[47] Super. Ct. Civ. R. 56(c).
[48] *Bernal v. Feliciano*, 2013 WL 1871756, at *2 (Del. Super. Ct. May 1, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del. 1962)).
[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).
[50] *Id.*

11

Although the party moving for summary judgment initially bears the burden of demonstrating that the undisputed facts support his legal claims,[51] once the movant makes this showing, the burden "shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."[52] When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.[53]

## V. DISCUSSION

### A. The Provision Denying Additional Uninsured Motorists Coverage to Regular Employees is not Void as a Matter of Public Policy

*i. The Relevant Statutory Authority and Case Law do not Support a Finding that the Provision is Void*

18 *Del. Admin. C.* §603[54] provides that insurance policies must cover bodily injury and property damage with limits of at least those proscribed by the financial responsibility law of Delaware.[55] In addition, insurers must offer additional coverage for damages resulting uninsured or underinsured motorists.[56] 18 *Del. C.* §3902(a)(1) expressly and unequivocally provides that this additional uninsured motorists coverage shall not be required "when rejected in writing."

Plaintiff does not dispute the insured's right to reject uninsured motorists coverage as provided by 18 *Del. C.* §3902(a)(1). Plaintiff also initially concedes, but later denies, that it is

---

[51]*Hughes ex rel. Hughes v. Christina Sch. Dist.*, 2008 WL 73710, at *2 (Del. Super. Ct. Jan. 7, 2008) (citing *Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 879-80 (Del. Super. Ct. 2005)).
[52]*Id.*
[53]*Joseph v. Jamesway Corp.*, 1997 WL 524126, at *1 (Del. Super. Ct. July 9, 1997) (citing *Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del. Super. Ct. 1978)).
[54] Delaware Administrative Code is a collection of regulations promulgated by various state administrative agencies. Title 18 of the Code contains regulations promulgated by the Delaware Insurance Commissioner. *Zurich Am. Ins. Co. v. St. Paul Surplus Lines, Inc.*, 2009 WL 4895120, n.58 (Del. Ch. Dec.10, 2009).
[55] 18 *Del. Admin. C.* §603-2.1. The applicable financial responsibility statute is 21 *Del. C.* §2118(a)(2)(b).
[56] 18 *Del. Admin. C.* §603-2.2.

12

permissible under Delaware law for a business to provide different levels of uninsured motorists coverage for different classes of employees, but that it is impermissible for a business to provide some additional uninsured motorists coverage for one class of employees but provide no additional coverage for another class of employees.[57] Plaintiff's most recent position is that unless an employer completely rejects supplemental uninsured/underinsured motorists coverage, all employees must be covered equally.[58]

The Court finds no case law on point in Delaware. The Delaware cases cited by Plaintiff in support of her position and the Indiana case are distinguishable in either fact or law from the instant case.[59]

*State Farm v. Washington* involved a family in which the father was the insured.[60] Because of the son's poor driving record, the father agreed to exclude the son as a driver on the father's insurance policy in a provision called a "named driver exclusion."[61] While driving a car not on the policy, the son was a non-negligent victim of an uninsured motorist tortfeasor. The insurance carrier denied the son coverage on the grounds of the named driver exclusion. However, crucially, the parties agreed that the son would have been covered for damages by an uninsured motorist had the son been a passenger at the time of the accident.[62] In other words, there was an inconsistency in the policy: the parties agreed that the son was covered against uninsured motorists generally, but the insurer maintained that the named driver exclusion negated this coverage if the son was driving at the time of the accident.[63]

---

[57] Plaintiff's June 30 Brief at 9.
[58] Plaintiff's July 30 Brief at 8-9.
[59] *Balagtas v. Bishop*, 910 N.E.2d 789 (Ind. Ct. App. 2009).
[60] *State Farm Mut. Auto Ins. Co. v. Washington*, 641A.2d 449 (Del.1994).
[61] *Id*. at 450.
[62] *Id*. at 452.
[63] *Id.*

In order to resolve this inconsistency, the court looked to the purpose of the named driver exclusion, which the court found to be to insulate the insurer from the risk of the son's poor driving record.[64] Since this purpose was not applicable under the circumstances presented, in which the son was not negligent, the court refused to apply the exclusion in that case. The *Washington* court found that, as a matter of public policy and Delaware law, exclusions to uninsured motorists coverage should be narrowly construed.[65] In the instant case, unlike in *Washington*, there is no inconsistency. The Policy unequivocally states that supplemental uninsured motorists coverage is rejected for employees other than directors, officers, partners, or owners.

*State Farm v. Wagamon* involved an automobile insurance provision commonly known as a "household exclusion."[66] The household exclusion denies liability insurance coverage for any personal injury claim brought by a member of the insured's family who resides with the insured.[67] The insured in *Wagamon* was a daughter who was driving an automobile with her mother as the sole passenger when they were in an accident. The mother later sued her daughter for personal injuries sustained in the accident.[68] The Delaware Supreme Court found such household exclusions to be in violation of both Delaware's financial responsibility law and public policy. The Court found that the exclusion violates the financial responsibility law, 21 *Del. C.* §2118, because it completely denies both liability and no-fault compensation coverage for injured parties who are members of the insured's family and reside with the insured.[69] The Court found that a household exclusion "conflicts with the basic requirement of providing

---

[64] *Id.*
[65] *Id.* (*citing Frank v. Horizon Assur. Co.*, 553 A.2d 1199, 1201 (Del. Super. Ct. 1989)).
[66] *State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557, 558 (Del. 1988).
[67] *Id.*
[68] *Id.*
[69] *Id.* at 559-560.

14

minimum legal liability coverage for claims by victims of an automobile accident, regardless of their relationship to the insured."[70]

The court in *Wagamon* discussed the history of household exclusion provisions as an attempt by insurers to guard against collusive suits by family members.[71] The court acknowledged that the threat of collusive suits is a legitimate concern.[72] However, the court found the passage of a financial responsibility law evinced the clear legislative intent that all victims, regardless of their relationship, be compensated "up to a minimum amount"[73] and suggested it was the passage of financial responsibility laws in several jurisdictions that spurred courts to invalidate household exclusion provisions.[74] There is no support for the claim that the *Wagamon* holding supports a public policy requiring coverage beyond the minimum coverage required by the state financial responsibility law. The statute, 18 *Del. C.* §3902(a)(1), expressly provides that additional uninsured motorists coverage may be waived, and Plaintiff concedes this point.[75]

The Court finds the case of *Lukk v. State Farm*, more applicable to the instant facts.[76] The plaintiff in *Lukk* was the victim of an underinsured motorist and sought compensation under his father's supplemental uninsured/underinsured motorists coverage. At the time of the accident, the plaintiff's father's policy contained a "resident relative clause," restricting coverage to family members who reside primarily with the insured.[77] There was evidence in the record that the plaintiff did not reside primarily with his father at the time of the accident, but this fact

---

[70] *Id.* at 561.
[71] *Id.* at 559.
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] Plaintiff's June 30 Brief at 9.
[76] *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1891000 (Del. Super. Ct. May 12, 2014).
[77] *Id.* at *2.

was disputed.[78] The plaintiff argued, that putting aside the factual dispute of where he primarily resided, the resident relative clause was void as matter of public policy because the clause "creates a class of persons, then restricts the scope of the insurance coverage for such persons, and in doing so improperly reduces the minimum coverage benefits provided under 18 *Del. C.* §3902."[79] The court pointed out the straightforward flaw in the plaintiff's argument: uninsured/underinsured motorists coverage offered under 18 *Del. C.* §3902 is not a statutorily mandated minimum found in 21 *Del. C.* §2118.[80] The court found that it was permissible for the insurer to offer the supplemental uninsured motorists coverage to plaintiff's father and the relatives residing with him, without extending coverage to other relatives not residing with the insured.[81]

Like in *Lukk*, the instant case does not deal with an attempt by an insurer to deny the minimum coverage mandated by 21 *Del. C.* §2118. Both cases concern limitations on supplemental uninsured/underinsured motorists coverage, which insurers are statutorily required to offer, and insureds may choose to purchase or decline under 18 *Del. C.* §3902. The court in *Lukk* found it permissible for an uninsured motorists provision to discriminate between relatives residing with the insured and relatives residing elsewhere and to provide additional coverage only for the former category. The provision in the instant case is similar in that it distinguishes between two different categories of individuals and provides additional coverage only for one category.

The principle that it is permissible for insurers and insureds to contract for additional coverage for some, but not all, parties covered by the policy is also supported by the court's

---

[78] *Id.* at *5.
[79] *Id.* at *2
[80] *Id.* at *5.
[81] *Id.*

16

reasoning in *Davis v. State Farm*.[82]  *Davis* concerned a class action by insureds against insurance providers, who assessed premiums for greater than minimum uninsured/underinsured motorists coverage for each vehicle in households where multiple vehicles were insured under the same policy.[83]  The plaintiffs argued that, as Delaware law has established that uninsured/underinsured motorists insurance is "personal" to the insured and not vehicle-specific, a person in a household that carries uninsured/underinsured motorists protection on one of its vehicles receives the same uninsured/underinsured motorists coverage regardless of which vehicle the person is driving.[84]  Thus, argued the plaintiffs, insurers that allow customers to select and pay for different uninsured/underinsured motorists coverage for different vehicles are "double dipping" by making customers pay for an illusory benefit.[85]

The insurers in *Davis* counter-argued, and the court agreed, that the higher coverage did confer a real benefit.  Even though the insured and members of the insured's family would receive the same uninsured/underinsured motorists coverage regardless of which vehicle was involved, permissive drivers or guests would receive uninsured/underinsured motorists benefits as per the amount of supplemental coverage purchased for the particular vehicle involved.[86]  Thus, the *Davis* court, like the court in *Lukk*, affirmed that it is permissible under Delaware law to have different levels of uninsured/underinsured motorists coverage for different vehicle users.

The Court now turns to the Indiana Court of Appeals case, *Balagatas v. Bishop*, upon which Plaintiff now relies.[87]  The facts in that case are nearly identical to the instant case.  The victim was an employee of a motor vehicle dealer, who was given a demo vehicle that he was

---

[82] *Davis v. State Farm Mutual Automobile Insurance Company*, 2011 WL 1379562  (Del. Super. Ct. Feb, 15, 2011
[83] *Id.* at *1.
[84] *Id.* at *5.
[85] *Id.*
[86] *Id.*
[87] *Balagtas v. Bishop*, 910 N.E.2d 789 (Ind. Ct. App. 2009).

permitted to drive for both business and personal use.[88] The victim was involved in a collision with an underinsured motorist and sustained serious injuries. The dealer, the victim's employer, had executed a "Commercial Auto Coverage Option Form" with the insurer, Federated Mutual Insurance Company.[89] The employer selected $500,000 in uninsured/underinsured motorists coverage for "directors, officers, partners or owners" and rejected uninsured/underinsured coverage for all other insureds.[90] The plaintiff in *Balagatas* admitted that he was not a director, officer, partner, or owner. The plaintiff's sole argument was that the provision granting supplemental uninsured/underinsured motorists coverage for only some employees was contrary to law and public policy.[91] The Indiana statute in question, Indiana Code section 27-7-5-2(b), provided,

> Any named insured of an automobile or motor vehicle liability policy has the right, *on behalf of all other named insureds and all other insureds*, in writing, to:
>
> (1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or
>
> (2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage nor rejected separately from the coverage rejected.[92]

The Court of Appeals found that the language of the statute required that any election or rejection of supplemental uninsured/underinsured motorists coverage must apply equally to "all… insureds," on whose behalf the named insured had the right to select coverage.[93]

---

[88] *Id.* at 791.
[89] *Id*. at 792.
[90] *Id.*
[91] *Id.* at 794.
[92] *Id.* at 794 (*citing* Indiana Code section 27-7-5-2(b)) (emphasis added).
[93] *Id*. at 796.

The Indiana statute had two important features, not present in the corresponding Delaware statute, which were the basis for the *Balagatos* court's decision. First, the statute says that the right to reject is "on behalf of all other named insureds and all other insureds." The court interpreted this language to mean that all of the insureds should be treated as a single class and given the same benefits.[94]

Second, the Indiana statute then goes on to explicitly spell out two options with regard to supplemental uninsured/underinsured motorists coverage—that the named insured may reject coverage for both uninsured and underinsured motorists *or* that the name insured may reject only one. This feature shows that the drafters contemplated and chose to explicitly address some options that allow the named insured to limit coverage (by choosing only uninsured motorists coverage or by choosing only underinsured motorists coverage). In light of this language, it is reasonable to infer that had the drafters intended to provide the option of rejecting supplemental uninsured/underinsured motorists coverage for only some insureds, that would have been made explicit in the statute.

The Delaware statute, 18 *Del. C.* §3902(a) is importantly different. The Delaware statute provides,

 (a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from

---

[94] *Id*. at 795. The current version of the Indiana statute makes it explicit that the election or rejection of coverage must be on behalf of all insureds. The statute provides, "A rejection of coverage under this subsection by a named insured is a rejection on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy." Indiana Code section 27-7-2-2(b)(2013).

owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

(1) No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.[95]

Unlike the Indiana statute, the Delaware statute contains no language that could be interpreted as creating a class of "all insureds." Also unlike the Indiana statute, the Delaware statute does not explicitly contemplate options for partial rejection of supplemental uninsured/underinsured motorists coverage.

*ii. Public Policy does not Demand a Departure from the Case Law in the Instant Case*

As stated previously, there is no case law precisely on point. The most applicable Delaware case, *Lukk v. State Farm*, established that it is permissible for an insurance policy to distinguish between two categories of relatives—those that reside with the insured and those that do not—and provide a benefit only to the former.[96] Plaintiff claims it is not permissible to treat different classes of insureds in a corporate structure differently in providing coverage beyond the statutory minimums required, but there is no compelling reason why disparate treatment would be permissible in the family context but not the corporate context.

---

[95] 18 *Del. C.* §3902(a).
[96] *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1891000 (Del. Super. Ct. May 12, 2014).

20

Plaintiff has conceded that it is acceptable for the employer to decline supplemental uninsured motorists coverage as long as it is uniformly declined for all employees. However, Plaintiff argues that allowing the employer to decline supplemental uninsured motorists coverage for a class of employees is bad public policy because it leaves some employees completely unprotected when they are the victims of uninsured or underinsured motorists. The Court does not accept that logic. Further, employees, including Decedent, were not completely unprotected. The financial responsibility law of the state, 21 Del. C. §2118(a)(2)(b), still requires all vehicles to have a policy that provides $15K for any one person and $30K for all persons injured in an accident. While Plaintiff may argue that this amount is inadequate, Decedent is not left with no coverage.

### B. Decedent was not a Director or Officer

Plaintiff's second argument is that the Policy is at least ambiguous as to whether Decedent qualifies as a "director" or "officer." As it is a general rule that an ambiguity in an insurance policy is to be construed against the insurer, Plaintiff argues that coverage should be extended to Decedent. The Court finds that the language in the Policy was not ambiguous, and Decedent was not a "director" or "officer" within the unambiguous meaning of the Policy terms.

The Delaware Supreme Court has affirmed the "general rule" that "an insurance contact is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted."[97] However, this rule is only applicable when there is an independent ambiguity in the contract language; "if the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them."[98] In

---

[97] *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982) (citations omitted).
[98] *Id.* (citations omitted).

21

interpreting a term in an insurance policy, the court must look to its context within the larger policy document. A court must "examine all relevant portions of the policy, rather than reading a single passage in isolation."[99]

The Delaware Supreme Court has interpreted these general principles to be consistent with the further interpretive doctrine that "an insurance policy should be construed to effectuate the reasonable expectations of the average member of the public who buys it."[100] However, the Court has also made clear that the interpretation of the policy is still limited by the policy language. "[A] fundamental premise of the [reasonable expectation] doctrine is that the policy will be read in accordance with the reasonable expectations of the insured so far as its language will permit."[101] The reasonable expectation doctrine "is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language."[102]

Again, there is no Delaware case directly on point cited by the parties or known to the Court. However, in *United Fire v. Thompson*, the Eighth Circuit affirmed the trial court's award of summary judgment to an insurer, finding that a policy affording coverage to "directors" was unambiguous, and further,did not cover a managerial employee merely because his job included "directing" other employees.[103] In *United Fire*, the insurance policy limited coverage to the corporation itself, as well as "executive officers," "directors," and "stockholders" with respect to their duties under these titles.[104] The employee in question was a supervisor who allegedly allowed the plaintiff, an employee, to operate a dump truck despite the knowledge that a

[99] *Sherman v. Underwriters at Lloyd's, London*, 1999 WL 1223759, *4 (Del. Super. Ct. Nov. 2, 1999) (citation omitted).
[100] *Hallowell,* 443 A.2d at, 926 (internal quotation, citation omitted).
[101] *Id.* at 927 (internal quotation, citation omitted).
[102] *Id.*
[103] *United Fire & Cas. Ins. Co. v. Thompson*, 758 F.3d 959, 962 (8th Cir. 2014).
[104] *Id.* at 961.

hydraulic pump on the truck was defective.[105]   The plaintiff argued that the policy was ambiguous, and that his supervisor is a director because the supervisor "often 'directed' people and processes as part of his job."[106]   The court applied Missouri state law, which, like Delaware, holds that a contract is only ambiguous when "it is reasonably open to different constructions."[107]   Also, like in Delaware, Missouri law requires a court to "examine the entire contract and apply meanings a person of average intelligence and education would understand" to determine whether such an ambiguity exists.[108]

The coverage provision at issue in *United Fire* appears in a part of the policy which separates out different types of insureds, depending on what kind of business organization was the named insured.[109]   The court reasoned that, as the term "directors" appears in section 1(d), which discusses coverage for corporations, it is implied that the term is used in the context of corporations.[110]   Like in Delaware, Missouri law says that corporations are controlled and managed by a board of directors who are elected by the corporation's shareholders.[111]

In the instant case, like in *United Fire*, the Court finds that the provision limiting supplemental coverage to "directors, officers, partners or owners of the named insured and family members who qualify as insureds" is unambiguous when read in context and does not apply to Decedent.   The provision appears on a document entitled, "Delaware Commercial Automobile Uninsured Motorists Coverage Option Form."[112] The named insured listed on the form is a corporation, Diamond Motor.[113]   The first of the two "Limit Options" selections that

---

[105] *Id.* at 960.
[106] *Id*. at 962.
[107] *Id.*
[108] *Id.*
[109] *Id.* at 961, 963.
[110] *Id.* at 963.
[111] Mo. Ann. Stat. §§351.310, 351.315.
[112] Option Form at 1.
[113] Option Form at 1.

are to be made on the form is the "Limit for directors, officers, partners or owners of the named insured and family members who qualify as insureds."[114]  These characteristics make clear the context of the provision is the corporate context; the form concerns coverage for a corporation and discusses limits for "directors, officer, partners or owners" of the organization.  Thus, this Court, like the court in *United Fire*, finds that the definitions in Delaware Corporations Law, rather than dictionary definitions, control.  Under Delaware Corporations Law, directors are members of the board of directors,[115] and officers are persons with specific titles and duties as set out in the corporation's bylaws or in a resolution by the board of directors.[116]  While Decedent's job may had included "directing" or "managing" persons or processes, the Court finds that the terms in the Policy have specific, unambiguous definitions that do not include Decedent.

## C. Plaintiff's Claim for Punitive Damages is Proper Under Delaware Law

As this Court ruled at the hearing held on August 14, 2014, Plaintiff's claim for punitive damages is proper.  Delaware law provides that a plaintiff who would have been entitled to collect punitive damages from an uninsured motorist may collect the same damages from the insurance carrier.[117]  However, as the Court has found that Decedent is excluded from coverage by a valid and unambiguous Policy provision, the claim for punitive damages against Federated is **MOOT**.

---

[114] Option Form at 1.
[115] 8 *Del. C*. §141(a).
[116] 8 *Del. C*. §142.
[117] *Jones v. State Farm Mut. Auto. Ins. Co.*, 610 A.2d 1352, 1354 (Del. 1992).

## VI. CONCLUSION

For the forgoing reasons, Plaintiff's Motion for Summary Judgment is hereby **DENIED**. Defendant Federated's Motion for Summary Judgment is hereby **GRANTED**, and the claim for punitive damages is **MOOT**.

**IT IS SO ORDERED.**

_____/s/_____
**M. JANE BRADY**
Superior Court Judge